IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

NOEL VANLANDINGHAM,       )
                                  )
     Plaintiff,              )
                                  )
     v.                      )     Civil Act. No. 1:19cv500-ECM
                                  )           (wo)
THE CITY OF ABBEVILLE, ALABAMA, )
                                  )
     Defendant.            )

**MEMORANDUM OPINION and ORDER**

Now pending before the Court is a motion to dismiss (doc. 26) filed by the City of Abbeville, Alabama ("the City') on January 8, 2020.

The Plaintiff, Noel Vanlandingham ("Vanlandingham"), originally filed a verified complaint in the Circuit Court of Henry County, Alabama.  The case was removed to federal court on the basis of federal question subject-matter jurisdiction.  In response to this Court's ruling on a previous motion to dismiss, and with leave of Court, Vanlandingham filed an amended verified complaint bringing a state-law claim for breach of contract (count one) and federal law claims for violation of the First Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment (count two).  (Doc. 22).

For reasons to be discussed, the motion to dismiss is due to be GRANTED in part and DENIED in part.

## I.   FACTS

The motion to dismiss is supported by attachments to the City's motion; therefore, the Court first must address the information which it can consider in ruling on a Rule 12(b)(6) motion to dismiss and then will set out the relevant facts.

A.   Information to be Considered in Ruling on the Rule 12(b)(6) Motion

Although courts generally only consider the language of a complaint in deciding a Rule 12(b)(6) motion to dismiss, a district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.  *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (quotation omitted).  The exception also may apply when a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss.  *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (stating that because the document was attached to the motion to dismiss, there was notice that the district court might consider the document, and because it is referred to in the complaint, it is central to claim; therefore, its consideration comports with the requirements of notice pleading, and neither party challenges its authenticity).

The City has attached to its motion a recording of the meeting between Amanda Mills ("Mills") and Vanlandingham as well as a transcript of that recording.  In his response to the motion to dismiss, Vanlandingham argues that the City relies on "extrinsic facts" which are more properly considered in the context of a motion for summary judgment, but does not contest the authenticity of the City's attachments. (Doc. 32 at 1).  He also

2

acknowledges that the amended complaint refers to the audio recording. (Doc. 32 at 2). The Court concludes, therefore, that it may consider the recording and the transcript of the recording in the context of a motion to dismiss. *Fin. Sec. Assur., Inc*., 500 F.3d at 1284.

The City also asks the Court to disregard allegations of the verified amended complaint which are contradicted by the recording.  Specifically, the verified amended complaint alleges that Mills secretly recorded a conversation with Vanlandingham, (doc. 22 at 2), but in the transcript of the recording Mills tells Vanlandingham she is recording him. (Doc. 27-4  at 37). When it comes to accepting as accurate the substance of an exhibit attached to a complaint, courts are to follow the same general pleading standards that apply under the Federal Rules of Civil Procedure, so that when exhibits attached to a complaint contradict general and conclusory allegations of the pleading, the exhibits govern, and vice versa. *Gill, as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 514-15 (11th Cir. 2019). Therefore, the Court accepts the more specific statement of the recording transcript that Mills told Vanlandingham she was recording their conversation.

The City also has attached to its motion the City of Abbeville Personnel Policies and Procedures Manual.  The amended verified complaint refers to and quotes from this manual. (Doc. 22 at ¶¶ 9,10, 13, 24).  Vanlandingham has not disputed the authenticity of the manual attached to the motion. *See Fin. Sec. Assur., Inc*., 500 F.3d at 1284.  Therefore, the Court will consider the manual. *See Butler v. Cleburne Cty. Comm'n*, 2012 WL 2357740, at *21 (N.D. Ala.)(stating "Plaintiff does not offer anything to dispute the authenticity, content, or relevance of the County Handbook excerpts filed by the defendants. Thus, the County Handbook excerpts may be considered without converting

the motion to one for summary judgment."), *report and recommendation adopted*, 2012 WL 2357741 (N.D. Ala. 2012).  The Court will, therefore, consider the portions of the manual attached to the motion to dismiss.

B.   Facts Alleged in the Amended Verified Complaint and in Defendant's Attachments Referenced in the Complaint

Plaintiff, Vanlandingham, at all times relevant to this case, was the Chief of the City of Abbeville Municipal Police Department.

On March 25, 2019, a deputy sheriff with the Henry County Sheriff's Office made a stop of a vehicle driven by Mills and occupied by a person identified only as Anthony. Mills videoed the actions of the deputy sheriff during the stop and subsequent arrest and later posted the video on Facebook.  (Doc. 22 ¶4).  As a result, the Henry County Sheriff's Office received hundreds of telephone calls critical of the sheriff's deputy's actions.  Mills' vehicle was also impounded pursuant to her arrest.

On April 19, 2019, Mills approached Vanlandingham in the Municipal Court building in Abbeville, Alabama and asked to speak to him, videoing their conversation. Mills spoke to Vanlandingham in his office while he was wearing his badge.  She said that she was having trouble retrieving her belongings from the vehicle which had been impounded as a result of her arrest. Vanlandingham advised her to talk to her attorney to make inquiry relating to the vehicle. (*Id*. ¶7).

During the course of their conversation, Vanlandingham was critical of the Sheriff's Department's actions toward Mills. During their meeting, for example, the following exchange occurred

4

> CHIEF VANLANDINGHAM:  Now, personally my opinion, I would have went about that thing a whole lot different.
> MS. MILLS:  Right.  So would we have, honestly.
> CHIEF VANLANDINGHAM:  I do believe -- and this is -- this is how I go about things.  I'm going to talk to you respectfully and I'm going to explain why I'm doing stuff, and I'm going to explain why I'm asking for his driver's license.  I'm going to tell you beforehand -- if I smell dope in your car and y'all won't be cooperative with me, I'm going to read you your rights right then.
> MS. MILLS:  That would have been perfect.
> CHIEF VANLANDINGHAM:  And then you're going to know, okay, we've stepped it up just a little notch and this is why he's doing this.  That's -- that's just the way that we kind of do things.
> MS. MILLS:  Right. And that makes sense.
> CHIEF VANLANDINGHAM:  Because you have a – I mean, you do have a right to know what's going on.

(Doc. 27-4 at 12).  Vanlandingham also told Mills, "as far as this not being able to get your property out, I might get my attorney to call up there and say why can't they get their property . . . [b]ecause they have no right to keep you from getting your personal items out of the vehicle." (Doc. 27-4 at 20: 1-8).

On May 13, 2019, Vanlandingham was called to the Mayor's office.  He was asked about a complaint which had been presented to the City Council. Vanlandingham was told that the complaint had been presented during executive session and so the nature of it could not be disclosed.  Vanlandingham alleges, therefore, that he was unable to respond to the complaint. (Doc. 22 ¶12).

On May 15, 2019, the Mayor advised Vanlandingham in a letter that a complaint against him regarding an audio recording was being placed on the agenda of the City Council. (*Id.* ¶13).  On May 20, 2019, the Mayor and the Abbeville City Council went into

executive session where they discussed the complaint about Vanlandingham outside of his presence and the presence of Vanlandingham's legal counsel. (*Id.* ¶14).  The City Council approved a punishment of suspension of Vanlandingham without pay for ten work days for failing to comply with a directive that he "get along with" the Henry County Sheriff.  (*Id.* ¶16).  The amended verified complaint also alleges that Vanlandingham did not directly or indirectly violate any prior legal directive of his superiors. (*Id.* ¶31).

The City's Personnel Policy provides that an employee may be suspended from duty and pay for a period not to exceed ten days for cause after notice and a departmental hearing. (*Id.* ¶15).  The policy also provides that the City reserves the right to make changes in either city policies or benefits at any time. (Doc. 27-1 at 4).

By letter dated May 23, 2019, the Mayor advised Vanlandingham that he was suspending him for ten days and that Vanlandingham had five days to appeal to the City Council.  (Doc. 22 ¶19).  An appeal hearing was held on June 3, 2019, and the suspension was upheld.  (*Id.* ¶20).

## II.   STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] … a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## III.   DISCUSSION

The City has moved to dismiss Vanlandingham's complaint in its entirety.  The Court begins with the grounds for dismissal asserted as to the First Amendment Claim and then moves to those regarding the state-law claim, Vanlandingham having conceded that his due process claim is due to be dismissed. (Doc. 32 at 1 & n.1).

A.  First Amendment Claim

The City moves to dismiss Vanlandingham's First Amendment claim on the grounds that he was speaking in his capacity as a City employee and so is not offered First Amendment protection, and also that his interest in speech is outweighed by the City's interest.

A government employer may not demote or discharge a public employee in retaliation for speech protected by the First Amendment. *Bryson v. City of Waycross*, 888

7

F.2d 1562, 1565 (11th Cir. 1989).  However, a citizen who enters public service "must accept certain limitations on [her] freedom[s]." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).  A government employee does not "relinquish the First Amendment rights he would otherwise enjoy as [a citizen] to comment on matters of public interest." *Pickering v. Bd. of Educ*., 391 U.S. 563, 568 (1968).

The U.S. Supreme Court has a two-part test for whether speech of a public employee is constitutionally protected:  (1) whether the employee spoke as a citizen on a matter of public concern and, if so, (2) whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.  *Garcetti*, 547 U.S. at 418 (citations omitted).  Both steps are questions of law. *Alves v. Board of Regents of the Univ. Sys. of Georgia*, 804 F.3d 1149, 1159 (11th Cir. 2015).

The first question itself has two requirements: for speech to be constitutionally protected, an employee must have spoken (1) as a citizen and (2) on a matter of public concern. *Id.* at 1160.  Practical factors relevant to the inquiry include the employee's job description, whether the speech occurred at the workplace, and whether the speech concerned the subject matter of the employee's job. *Id.* at 1161.  Whether the speech was given to a limited audience or as part of a public dialogue is also a consideration. *Anderson v. Burke County, Ga*., 239 F.3d 1216, 1221 (11th Cir. 2001).  This Court will address each step of the analysis in turn.

1.   Whether Speech by the Public Employee Was as a Citizen or as an Employee

As to the first requirement under *Garcetti*, the central inquiry is whether the speech at issue "owes its existence" to the employee's professional responsibilities. *Garcetti*, 547 U.S. at 412-22.  Activities undertaken in the course of performing one's job are activities undertaken "pursuant to employment responsibilities." *Id.* at 424.  Concerns raised "in the course of performing—or, more accurately, in the course of trying to perform—their ordinary roles" are "made in furtherance of their ability to fulfill their duties" and therefore not protected speech. *Alves*, 804 F.3d at 1164–65.   The fact that an employee learned of the subject matter of his speech in the course of his employment, however, cannot alone transform speech into employee speech.  *Id.* at 1163.  It is the speech itself which must owe its existence to the public employee's professional responsibilities. *Id.*  So, for example, an employee who is asked to review another employee's medical qualifications and speaks about those medical qualifications, the process for hiring, and potential liability for the government based on its process, has engaged in speech as an employee, *see King v. Board of Cnty. Comm'nrs,* 916 F.3d 1339, 1347 (11th Cir. 2019), whereas an employee who provides testimony compelled by subpoena and the subject matter of the testimony concerns information learned during that employment is not speaking as an employee, s*ee Lane v. Franks*, 573 U.S. 228, 240-41 (2014).

In its analysis, a district court has to consider the "content, form, and context" of the allegedly protected speech in light of the plaintiff's job duties. *Moss v. City of Pembroke Pines*, 782 F.3d 613, 621 (11th Cir. 2015).

In the instant case, the City has argued that this Court should consider the allegation that Vanlandingham spoke to Mills while acting in compliance with his duties as the Police

Chief.  However, the citation given by the City for that allegation is Vanlandingham's original verified complaint, (doc. 27 at 41), and the City does not contend that there is any allegation to that effect in the amended verified complaint.  In fact, the amended verified complaint alleges that Vanlandingham, in speaking with Mills, was speaking privately and giving his personal opinion about the County Sheriff's Office and not speaking about any policy of the City. (Doc. 22 ¶¶36, 37).  "Under the Federal Rules, an amended complaint supersedes the original complaint." *Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982).  Therefore, the Court will not consider the allegations of the original verified complaint in light of Vanlandingham's properly filed amended verified complaint. *See McLaughlin v. Pezzolla*, 2007 WL 676674, at *7 (N.D.N.Y. 2007) (recognizing that the initial complaint gave the impression her speech was covered by *Garcetti* but allowed amendment of complaint so that it contained allegations that could support plaintiff's claims that some of her speech was beyond the scope of her professional duties).

The primary thrust of the City's motion is that the content of the speech itself shows that Vanlandingham was speaking to Mills as part of his official job responsibilities.  The City argues that Vanlandingham acknowledged that he was speaking as part of his job duties in a portion of the recording near the very end of the conversation between Mills and Vanlandingham in which Mills asked Vanlandingham whether he is able to give opinions, Vanlandingham asked "legal opinions?;" another speaker responded, "personal opinions;" Mills said, "human opinions;" and Vanlandingham said that he can "off-record." (Doc. 27-4 at 49: 15-20).  The transcript is unclear as to what Vanlandingham meant as

offering an opinion "off-record;" however, Vanlandingham then asked if they are off-record and responded, "if you would like," when Mills said she can turn off the recording. (Doc. 27-4 at 49: 21-23). This ambiguous statement is not sufficient to establish that Vanlandingham was speaking as part of his job duties, given his specific allegation in the amended verified complaint that he was offering personal opinions during the recorded part of the conversation with Mills.

The City also points out that during the conversation with Mills, Vanlandingham referred to "my" department and staff and explained how he handles law enforcement situations. The City places significance on the fact that Vanlandingham explained that when citizens ask for information, he gets it for them, and that that is the way his department runs. (Doc. 27-4 at 37-38).

It is clear from the transcript of the recording that Vanlandingham spoke in his workplace while wearing his badge. These factors weigh in favor of a finding that he spoke as an employee. *See Keller v. City of Tallahassee*, 181 F. Supp. 3d 934, 953 (N.D. Fla. 2015) (stating all of the speech acts took place in the work environment which by itself is not dispositive, but strongly suggests that the speech was made as an employee.).

It is also clear that Vanlandingham advised Mills that she had the right to know where her car was impounded and that she could seek advice from an attorney. (Doc. 27-4 at 20:1-8). He also spoke about what happens in his own city police department and how his officers treated citizens. Vanlandingham also offered criticism of Michael Miller, a sheriff's deputy, who was formerly employed with the police department. (Doc. 27-4 at

18: 9-16).  The significance of these statements for First Amendment analysis must be considered as part of the practical inquiry.

It is the law in the Eleventh Circuit that when a public employee is approached by his employer about giving information as part of the employee's official job duties, that is a significant factor in First Amendment analysis.  *See King*, 916 F.3d at 1346 (holding that employee spoke as an employee and noting that speech was begun because the employee had been asked to make an inquiry as part of the employee's job responsibilities).  In this case, however, Vanlandingham was not speaking in response to an inquiry from his employer, but rather from a citizen.  In conducting the analysis in *King*, the court had before it an affidavit from the plaintiff as to the scope of her job responsibilities. *Id.*  The only allegation in the amended verified complaint in this case relevant to the question of whether responding to a citizen's inquiry was within the scope of Vanlandingham's job responsibilities is his explanation that he gets information if he is asked something and does not have the information. The amended verified complaint alleges, however, that in speaking to Mills, Vanlandingham was expressing his personal views. (Doc. 22 ¶36).

Even assuming that addressing a citizen's complaints and/or request for advice from a citizen about the police department is within the police chief's job responsibilities, the speech at issue here was about a separate branch of law enforcement, not the police department.  In his interaction with Mills, Vanlandingham stated that he has nothing to do with the Sheriff's Department. (Doc. 27-4  at 17: 1-7) (explaining that when a concern was raised with regard to Mills' arrest Vanlandingham said, "I ain't got nothing to do with the sheriff's department.").  At another point, when Mills described a separate interaction she

12

had with law enforcement, Vanlandingham again stated that, based on the description of the vehicle, it was not with his department,. (Doc. 27-4 at 36: 11-14).  Vanlandingham also offered an opinion as to how Mills should be treated as a "citizen of this county."  (Doc. 27-4 at 38: 2-5).

The City argues that the fact that Vanlandingham was speaking about another branch of government is not dispositive because the plaintiff in *Garcetti* also criticized another branch.  The difference, however, is that the public employee in *Garcetti* was a deputy district attorney commenting on actions by law enforcement in a "disposition memo . . . that is part of what he, as a calendar deputy, was employed to do." *Garcetti,* 547 U.S. at 421.  In other words, while it may be that speech critical of a separate law enforcement branch could be pursuant to official duties, the speech at issue here was speech to a citizen in response to her inquiries about a different department. The relevant inquiry is whether statements were made as a citizen "who do[es] not work for the government." *Akins v. Fulton Cty., Ga*., 278 F. App'x 964, 971 (11th Cir. 2008).  The fact that Vanlandingham's advice was based on knowledge gained through his employment is not dispositive because the fact that an employee learned of the subject matter of his speech in the course of his employment cannot alone transform speech into employee speech. *See Alves*, 804 F.3d at 1163.

While not directly on point, *Carollo v. Boria*, 833 F.3d 1322 (11th Cir. 2016) is instructive.  In *Carollo*, the Eleventh Circuit held that a public employee spoke as a private citizen, not an employee, when he complained about misconduct by fellow public employees. 833 F.3d at 1330-31.  The public employee in *Carollo* was a city manager who

13

spoke out at public city council meetings and to local and federal authorities against alleged campaign finance law violations by the mayor. 833 F.3d at 1330.  While the defendants pointed to the speaker's job responsibilities to ensure that laws are enforced, the Eleventh Circuit explained that "it is not appropriate at the motion to dismiss stage for us to interpret the Municipal Charter's ambiguous job description for the City Manager" and that discovery was needed to show which "laws [the plaintiff] had the responsibility to enforce or administer and, in fact, enforced or administered in the ordinary course of his job responsibilities." *Id.* at 1330; *see also King*, 916 F.3d at 1350 (explaining that in *Carollo* the court "held that enforcing Florida's campaign finance laws was not within the city manager's ordinary job duties.").  The Eleventh Circuit further held that status as a supervising public official does not mean that an employee cannot plausibly allege that he spoke as a citizen. 833 F.3d at 1330.  The court explained that while it read "*Moss*, like *Garcetti*, to stand for the proposition that a supervising public official's ordinary job responsibilities often extend beyond what is written in a formal job description," the defendants could not support an argument that the plaintiff's "administrative responsibilities included enforcing Florida's campaign finance laws . . . in the absence of discovery that better reveals Carollo's ordinary job responsibilities as City Manager." *Id.* The court further explained that it was not appropriate to focus on whether an ordinary citizen could have engaged in the speech in question, but instead, the "focus is on whether Carollo as City Manager ordinarily made reports to law enforcement and other agencies about violations of Florida's campaign finance laws." *Id.* at 1331.

14

Following the Eleventh Circuit's application of First Amendment law in the context of the present motion to dismiss, it is not dispositive that Vanlandingham supervised a department or that he learned the subject matter of his speech by virtue of his employment. *Id.*  Instead, to decide whether, as a matter of law, Vanlandingham spoke as an employee and not as a citizen, this Court must conduct a practical inquiry to determine whether the alleged facts show that Vanlandingham's speech was within his ordinary job responsibilities.  This Court concludes that, based on the allegations of the amended verified complaint, Vanlandingham spoke in response to a citizen's questions about actions by a different law enforcement branch, not the City police department which employed him, and in the absence of sufficient facts to more fully analyze the context of that speech, he has plausibly alleged that he was not speaking pursuant to his employment responsibilities.  Further analysis of this issue may be undertaken by the Court at a later stage of this case, after factual development. *See id.* at 1332 (noting that "each of the relevant cases from the Supreme Court and this Circuit to undertake *Garcetti*'s "practical inquiry" concerning whether a plaintiff spoke pursuant to ordinary job responsibilities or as a citizen did so at the summary judgment stage or later in the life of the case."). Therefore, the Court turns to the next step of the analysis.

2.   Whether the Speech Was on a Matter of Public Concern

The next inquiry in a First Amendment analysis is whether the speech was on a matter of public concern. *Alves*, 804 F.3d at 1159.  It is well-established that exposing governmental inefficiency and misconduct is a matter of considerable significance. *Garcetti*, 547 U.S. at 425.   The City does not contend otherwise in this case.

Vanlandingham engaged in speech critical of the Sheriff's Department's actions. Therefore, for purposes of the pending motion to dismiss, this prong of the analysis has been satisfied.

     3.   The *Pickering* Balancing Test

In balancing the City's interest in promoting efficient government services against Vanlandingham's interest in protected freedom of speech, this Court must consider (1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time, and place of the speech; and (3) the context within which the speech was made. *See Martinez v. City of Opa–Locka*, 971 F.2d 708, 712 (11th Cir.1992) (quotation omitted).  A court's "pertinent considerations [include] whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

In this case the City argues that its interest as a paramilitary organization in maintaining order within its organization outweighs Vanlandingham's interest in speech. Vanlandingham argues in response that he has alleged no facts which demonstrate that this justification outweighs his interest in speaking as a citizen on a matter of public concern, and that discovery is needed before conducting *Pickering* balancing.

Courts have recognized that "in a law enforcement agency, there is a heightened need for order, loyalty, morale and harmony, which affords a police department more latitude in responding to the speech of its officers than other government employers."

*Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1293 (11th Cir. 2000). Cases involving law enforcement acknowledge that "comments concerning co-workers' performance of their duties and superior officers' integrity can directly interfere with the confidentiality, esprit de corps and efficient operation of the police department." *Busby v. City of Orlando*, 931 F.2d 764, 774 (11th Cir. 1991) (quotation and citation omitted). In this case, however, the speech at issue did not concern co-workers or superior officers. Furthermore, Vanlandingham alleged that his expression did not interfere with internal police operations or with order and discipline and was not likely to do so. (Doc. 22 at ¶30). This Court must accept those allegations. *See Cotriss v. City of Roswell*, 2017 WL 5642248, at *6 (N.D. Ga. 2017) (denying motion to dismiss and considering allegations that the plaintiff's speech "did not in any way impair or reflect on the City or the RPD" and "did not impede the City or RPD's ability to perform its duties efficiently.").

In its brief, the City also has taken the position that Vanlandingham's comments undermined relationships among law enforcement officers, and offers legal argument as to why such relationships are important. (Doc. 33 at 10). At the motion to dismiss stage, however, the Court does not have any allegations before it as to the effect of Vanlandingham's speech on relationships with other law enforcement branches or its significance. At most, the amended verified complaint notes that a reason given for Vanlandingham's discipline was that he violated a directive to "get along with the Henry County Sheriff." (Doc. 22 at ¶16). The amended verified complaint also alleges, however, that his speech did not "directly or indirectly violate any prior legal directive from his superiors." (Doc. 22 ¶31).

17

The City's argument requires the Court to infer the negative ramifications of Vanlandingham's speech, which is an approach rejected by courts.  *See Fernandez v. Sch. Bd. of Miami-Dade Cty.*, 201 F. Supp. 3d 1353, 1369 (S.D. Fla. 2016) (noting in conducting *Garcetti* analysis that the court cannot make any inference detrimental to the plaintiffs or their claims at this stage); *Brown v. Greene Cty. Comm'n*, 806 F. Supp. 2d 1193, 1210 (N.D. Ala. 2011) (stating, "The Commission essentially requests that the court infer or presume the negative ramifications of Brown's speech, if there were any, from the speech itself and without any other evidence or explanation. Such a request, however, is not consistent with Eleventh Circuit precedent."); *see also Eiland v. City of Montgomery*, 797 F.2d 953, 959 (11th Cir. 1986) (discounting testimony as to the disruptive nature of speech because it was "almost uniformly based upon assumption and speculation as to how the poem might have been perceived by other officers.").  While an employer does not have to prove an actual negative impact under *Pickering* balancing, there must be a "reasonable possibility of adverse harm." *Moss*, 782 F.3d at 622.  This Court cannot reach that conclusion at this stage in the proceedings. *See  Higbee v. E. Michigan Univ.*, 399 F. Supp. 3d 694, 704 (E.D. Mich.) (finding in the context of a motion to dismiss that without further factual development, the court cannot conclude that the defendants' predictions of workplace or student disharmony were reasonable), *case dismissed*, 2019 WL 5079254 (6th Cir. 2019).

"Based on the facts as pled and taking the facts most favorable to Plaintiff, the Court cannot find that Defendant'[s] interests [as a paramilitary organization] outweigh Plaintiff's First Amendment freedom of speech interests." *Cochran v. City of Atlanta*, 150 F. Supp.

18

3d 1305, 1314 (N.D. Ga. 2015). Factual development of this case may warrant a different conclusion at a later point in the proceedings, but at this point, the motion to dismiss is due to be denied as to the First Amendment claim.

B. Breach of Contract

The City moves to dismiss the state-law breach of contract claim on the basis that Vanlandingham was an at-will employee and that the relevant employee handbook disclaims any alteration to the employment-at-will relationship.

Vanlandingham argues that he is not seeking to enforce an employment contract, but is instead alleging that the disciplinary procedure used in this case violated the personnel policies and procedures of the City.

Whether the terms of a handbook meet the requirements of a contract offer is generally a question of law to be decided by a court. *See Carr v. Stillwaters Development Co.*, 83 F. Supp. 2d 1269, 1278 (M.D. Ala. 1999). Alabama courts have held that employers are entitled to prevail as a matter of law on contract claims founded upon employee handbooks that expressly disclaim an intention to make a contract or reserve to the employer the right to change policies unilaterally. *See Abney v. Baptist Med. Centers*, 597 So. 2d 682, 683 (Ala. 1992); *see also Butler v. Cleburne Cty. Comm'n*, 2012 WL 2357740, at *20 (N.D. Ala. 2012) (collecting state and federal cases), *report and recommendation adopted*, 2012 WL 2357741 (N.D. Ala. 2012). The handbook in question in this case has such a disclaimer. (Doc. 27-1 at 4). Therefore, even though he has attempted to recast his claim as a claim for violation of the terms of the policy handbook in disciplining him in violation of the policy manual, rather than as a breach of an

19

employment contract, Vanlandingham's claim is due to be dismissed under Alabama law. *See id.* (rejecting claim that Baptist Medical Centers had failed to follow the procedures set out in the handbook and, therefore, had breached an agreement).  The motion to dismiss will be GRANTED as to the state-law claim.

## IV.  CONCLUSION

For the reasons discussed, it is ORDERED as follows:

1.  The motion to dismiss (doc. 26) is GRANTED as to the federal due process claim and state-law breach of contract claim, and those claims are DISMISSED with prejudice.

2.  The motion to dismiss (doc. 26) is DENIED as to the federal First Amendment claim, and the case will proceed on that claim.

DONE this 20th day of April, 2020.


/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE