IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NOEL VANLANDINGHAM,              ) | |
|                                                             ) | |
|    Plaintiff,                                  ) | |
|                                                             ) | |
| v.                                                       ) | Civil Act. No. 1:19cv500-ECM |
|                                                             ) | (wo) |
| THE CITY OF ABBEVILLE, ALABAMA, ) | |
| *et al.*,                                                ) | |
|                                                             ) | |
|    Defendants.                              ) | |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court is a motion to dismiss (doc. 47) filed by the City of Abbeville, Alabama ("the City") and Billy Helms, Terry Allums, Brendt Murphy, Dorothy L. Baker, Rena' Cosby, and Harold Robison, Jr. ("the individual Defendants").

The Plaintiff, Noel Vanlandingham ("Vanlandingham"), originally filed a verified complaint in the Circuit Court of Henry County, Alabama, bringing claims against the City. The case was removed to federal court on the basis of federal question subject-matter jurisdiction. In response to this Court's ruling on a previous motion to dismiss, and with leave of court, Vanlandingham filed an amended verified complaint in November 2019. (Doc. 22). Vanlandingham filed a second amended verified complaint with leave of court on June 26, 2020. In that complaint, Vanlandingham added the individual Defendants. Although Vanlandingham brings a single count, alleging retaliation in violation of the First Amendment to the United States Constitution, that count includes a retaliation theory based on the suspension of Vanlandingham from employment for his speech and a separate theory

of retaliation through termination of his employment for the filing of this lawsuit. (Doc. 44 at 13).

For reasons to be discussed, the motion to dismiss is due to be GRANTED in part and DENIED in part.

## I. FACTS

Plaintiff, Vanlandingham, at all times relevant to this case, was the Chief of the City of Abbeville Municipal Police Department.

On March 25, 2019 a deputy sheriff with the Henry County Sheriff's office made a stop of a vehicle driven by Amanda Mills ("Mills") and occupied by Anthony Balog. Mills videoed the actions of the deputy sheriff during the stop and subsequent arrest and later posted the video on Face Book. (Doc. 44 ¶¶23-24). As a result, the Henry County Sheriff's Office received hundreds of telephone calls critical of the sheriff deputy's actions. Mills' vehicle was also impounded pursuant to her arrest and the vehicle contained some personal belongings.

On April 19, 2019, Mills approached Vanlandingham in the Municipal Court building in Abbeville, Alabama and asked to speak to him, videoing their conversation. Mills spoke to Vanlandingham in his office while he was wearing his badge. She said that she was having trouble retrieving her belongings from the vehicle which had been impounded as a result of her arrest. Vanlandingham advised her to talk to her attorney to make inquiry about retrieving her personal belongings. (*Id.* ¶39).

During the course of their conversation, Vanlandingham was critical of the Sheriff department's actions toward Mills. During their meeting, for example, the following exchange occurred

> CHIEF VANLANDINGHAM: Now, personally my opinion, I would have went about that thing a whole lot different.
> MS. MILLS: Right. So would we have, honestly.
> CHIEF VANLANDINGHAM: I do believe -- and this is -- this is how I go about things. I'm going to talk to you respectfully and I'm going to explain why I'm doing stuff, and I'm going to explain why I'm asking for his driver's license. I'm going to tell you beforehand -- if I smell dope in your car and y'all won't be cooperative with me, I'm going to read you your rights right then.
> MS. MILLS: That would have been perfect.
> CHIEF VANLANDINGHAM: And then you're going to know, okay, we've stepped it up just a little notch and this is why he's doing this. That's -- that's just the way that we kind of do things.
> MS. MILLS: Right. And that makes sense.
> CHIEF VANLANDINGHAM: Because you have a – I mean, you do have a right to know what's going on.

(Doc. 48-3 at 12). [1]

On May 13, 2019, Vanlandingham was called to the Mayor's office. Defendant Helms asked him about a complaint which had been presented to the City Council.

---

[1] Although courts generally only consider the language of a complaint in deciding a Rule 12(b)(6) motion to dismiss, a district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged. *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (quotation omitted). The exception also may apply when a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss. *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

Vanlandingham was told that the complaint had been presented during executive session and so the nature of it could not be disclosed. Vanlandingham alleges, therefore, that he was unable to respond to the complaint. (Doc. 44 ¶49).

On May 15, 2019, Helms advised Vanlandingham in a letter that a complaint against him regarding an audio recording was being placed on the agenda of the City Council. (*Id.* ¶59). On May 20, 2019, Helms and the Abbeville City Council went into executive session where they discussed the complaint about Vanlandingham outside of his presence and the presence of Vanlandingham's legal counsel. (*Id.* ¶61). The City Council voted on and approved a punishment of suspension of Vanlandingham without pay for ten work days for failing to comply with a directive that he "get along with" the Henry County Sheriff. (*Id.* ¶62). Vanlandingham has alleged in his second amended verified complaint that the City of Abbeville acts through its Mayor and Commissioners, that the City Council voted to suspend Vanlandingham. (Doc. 44 ¶¶3, 62). The second amended verified complaint also alleges that Vanlandingham did not directly or indirectly violate any prior legal directive of his superiors. (*Id.* ¶66).

The City's Personnel Policy provides that an employee may be suspended from duty without pay for a period not to exceed ten days after notice and a departmental hearing. (*Id.* ¶63).

By letter dated May 23, 2019, Helms advised Vanlandingham that the ten-day suspension was appropriate (Doc. 44 ¶69). Vanlandingham appealed the suspension. (*Id.* ¶70). On June 3, 2019, the City Council met in executive session, and contended that the meeting was the appeal hearing. (*Id.* ¶71). The suspension was upheld. (*Id.* ¶78).

4

Vanlandingham filed suit on June 14, 2019.  While the City's motion to dismiss his verified amended complaint was pending, on April 6, 2020, the City Council voted to terminate Vanlandingham's employment.  (*Id.* ¶86).  Vanlandingham alleges that he had supporters who came to the City Council meeting but the City Council did not allow them to speak, or even attend the meeting, citing social-distancing requirements and limits on gatherings imposed on April 4, 2020 due to the COVID-19 pandemic. (*Id.* ¶88). Vanlandingham alleges that the City Council would not continue the issue of his termination to a later date. (*Id.* at ¶88). Vanlandingham alleges that he was terminated because of the allegations he is pursuing in this lawsuit. (*Id.* ¶90).

## II.    STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] … a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U. S. at 678.  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard.

5

*Twombly*, 550 U. S. at 555, 570.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

### III. DISCUSSION

The motion to dismiss seeks dismissal of all claims.  The Court will separately address the claims against the City and then the individual Defendants.

A.  Claims against the City

1.  First Amendment Claim Arising Out of Unpaid Suspension

This Court previously has addressed a motion to dismiss as to the suspension aspect of Vanlandingham's claim against the City and has concluded that Vanlandingham has stated a plausible First Amendment claim. (Doc. 34).  The Court will not revisit the City's previously raised arguments, or the Court's analysis, again here.  The Court notes, however, that the City has raised a new ground for dismissal; namely, that Vanlandingham has failed to allege a basis for municipal liability in this case because there can be no deliberate indifference if a constitutional right is not clearly established. (Doc. 48 at 55) (citing, among other cases, *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254 (8th Cir. 2010)).

Upon review of the second amended verified complaint, it is apparent that Vanlandingham is proceeding on a different municipal liability theory than that identified by the City.  A plaintiff can establish municipal liability under 42 U.S.C. § 1983 in either one of two ways:  (1) by showing that his alleged constitutional injury was caused by "a

6

municipal official who has final policymaking authority in a certain area of the city's business," or (2) by establishing "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or use with the force of law." *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1480-81 (11th Cir. 1991) (quotations and citations omitted). In this case, Vanlandingham has alleged in his second amended complaint that the City acts through its Mayor and Commissioners, and that the City Council voted to suspend Vanlandingham. (Doc. 44 ¶¶3, 62).

The caselaw relied on by the Defendants was developed in the context of a deliberate indifference to violations by employees of the municipality, not actions officially taken by the municipality. *See Veatch*, 627 F.3d at 1258 (plaintiff alleged that the City has acted with a policy of deliberate indifference to constitutional rights by failing to train its officers on the lawfulness of warrantless misdemeanor arrest). Because Vanlandingham has alleged that the City itself, through its final policy makers, suspended him, the City's argument that there is no basis for municipal liability in this case is unavailing, and the motion to dismiss is due to be DENIED as to claim for the denial of Vanlandingham's First Amendment rights through his suspension as against the City.

2. First Amendment Claim Arising From Termination

The motion to dismiss seeks dismissal of Vanlandingham's termination claim based on multiple grounds, including that his contesting his ten-day suspension in a lawsuit was not a matter of public concern, that the termination was too remote from the filing of the

lawsuit to establish causation, and that the comments of Vanlandingham's counsel will not support a retaliation claim. The Court begins with causation.

The City points out that Vanlandingham initially filed his lawsuit on June 14, 2019, but was not was terminated until April 6, 2020. The City cites to employment law precedent which holds that a three to four-month disparity between statutorily protected expression and an adverse employment action is not enough to establish causation. *See, e.g.*, *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

Vanlandingham argues in response that courts have recognized that plaintiffs are given leeway when information supporting their case is under the exclusive control of the defendant. *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003). Vanlandingham points out that temporal proximity is just one way to create an inference of causation but that absence of immediacy does not disprove causation. He argues that by delaying action, employers can take advantage of cases which have established that a gap of three to four months is too great to allow for timing to establish causation. Therefore, while Vanlandingham acknowledges that there is a gap between the protected activity of his filing of his complaint and his termination, he contends that other facts may establish causation for purposes of the motion to dismiss, such as a pattern of antagonism on the part of the Defendants or that the adverse action was taken at the first opportunity for the employer to retaliate.

In support of his "pattern of antagonism" theory of causation, Vanlandingham argues in his brief that he spoke out on matters of public concern, he was suspended, he objected to the City's actions in undermining protections promised to employees, and filed

8

pleadings in this case. He contends that discovery would show that he was subjected to scrutiny while the City and individual Defendants tried to find a reason to terminate him. (Doc. 54 at 20).

The "pattern of antagonism" theory has been referred to by the Eleventh Circuit in an unpublished opinion, although it was not a basis for causation in that case. *See Ward v. UPS*, 580 Fed. App'x 735, 739 (11th Cir. 2014) (stating that where there is a "significant time gap between the protected activity and the adverse action, the plaintiff must offer additional evidence to demonstrate a causal connection, such as a pattern of antagonism or that the adverse action was the first opportunity for the employer to retaliate."). In its discussion, the Eleventh Circuit cited to a Third Circuit decision, *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997). In *Kachmar*, although noting the theory, the court also did find a pattern of antagonism, but instead relied on allegations of retaliatory animus. *Kachmar*, 109 F.3d at 178.

For guidance in applying this standard, this Court, therefore, looks to a persuasive opinion from a court in this circuit which has applied a pattern of antagonism analysis in the context of a motion to dismiss. *See El-Saba v. Univ. of S. Alabama*, 2015 WL 5849747, at *17 (S.D. Ala.), *report and recommendation adopted as modified*, 2015 WL 5882977 (S.D. Ala. 2015). In *El-Saba*, the court found sufficient allegations of a causal connection where there the complaint contained factual allegations which the court found "plausibly paint a mosaic of retaliation and an intent to punish . . . for complaining of discrimination." *Id.* The alleged pattern of antagonism included allegations of multiple complaints,

9

followed by allegations of specific adverse reactions by the defendant, and the reactions were alleged to have occurred prior to and after the last protected activity. *Id.*

In this case, Vanlandingham has not pleaded any facts of actions by the City or individual Defendants which occurred after he filed his lawsuit, but has instead stated in his brief that he anticipates that discovery will reveal that he was subjected to heightened scrutiny. (Doc. 54 at 21). While it may be that leeway is given where information is within the exclusive control of a defendant, there is no indication that that is the situation here, where antagonist actions taken against Vanlandingham would be known to him. Instead, the complaint lacks any allegation of any action taken by the City or individual Defendants which was experienced by Vanlandingham after he filed his complaint, other than that Vanlandingham was terminated. (Doc. 44). This Court cannot conclude, therefore, that the pattern of antagonism theory of causation is fairly within the allegations of Vanlandingham's complaint.

The "first opportunity to retaliate" doctrine allows a plaintiff to prove causation, even though there is a "temporal gap sufficient to prevent a finding that the protected activity and the retaliatory conduct have some causal connection—if the plaintiff can show that the defendant had no earlier opportunity to retaliate and that the evidence shows the events are not completely unrelated." *Rose v. Wal-Mart Stores E., Inc.*, 2015 WL 1345718, at *8 (N.D. Ala.), *aff'd*, 631 F. App'x 796 (11th Cir. 2015). In cases applying this standard, there is "an absence—either by the plaintiff or the supervisor—that delayed the employer's ability to retaliate." *Id.* The cases have persuasively reasoned that "the reason a long wait often implies no causation—that supervisors out to punish someone likely do so at an early

opportunity after the event, while delay makes an intervening cause more likely—does not apply" if the defendant did not have an opportunity to take adverse action until a later date. *See McGuire v. City of Springfield, Ill.*, 280 F.3d 794, 796 (7th Cir. 2002).  The causation theory is applied, for example, where the plaintiff did not work for a period of time, and adverse action was taken only once the plaintiff resumed work. See, *e.g.*, *Dale v. Wynne*, 497 F. Supp. 2d 1337, 1346 (M.D. Ala. 2007).

In this case, Vanlandingham's theory is that the first opportunity that presented itself for the City to terminate him was in April of 2020, because it was only then, after imposition of the federal and state guidelines regarding COVID-19 restrictions on gatherings, that the City could move forward with a termination without the opportunity for the public to voice opposition. (Doc. 54 at 21).

The April 4, 2020 COVID-19 restrictions on gatherings could not have been foreseen at the time Vanlandingham filed his complaint in June 2019, so a theory that after he filed his complaint, the City waited to terminate him until those restrictions were imposed fails to rise above the speculative level. *See Twombly*, 550 U. S. at 555.  Further, there is no allegation that Vanlandingham was absent from his employment, or that the City was unable to act on his employment between June 2019 and April 2020.  In addition, while Vanlandingham has alleged that the public was not allowed to attend the City Council meeting, there is no allegation that the presence of the public who supported Vanlandingham could have prevented action by the City.  Vanlandingham, therefore, asks for an application of the "first opportunity" doctrine which this Court finds to be an unsupported extension of the law.

Finally, Vanlandingham argues in his brief that he should be allowed to conduct discovery as to whether there were others who were not terminated who were accused of similar misconduct. (Doc. 54 at 24-5). There is no allegation in the second amended complaint that any person was not terminated after engaging in similar behavior, however. A reference in brief to something that might be discovered, in the absence of any allegation in complaint that there was any disparate treatment, is not sufficient to withstand a motion to dismiss. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (stating the plausibility standard calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the defendant's liability).[2]

This Court certainly agrees that temporal proximity is just one way to create an inference of causation and that absence of immediacy does not disprove causation. However, in the absence of any alleged facts which support Vanlandingham's theory of a pattern of antagonism, the "first opportunity" doctrine, or disparate treatment, timing is the only causation theory pointed to by Vanlandingham. The amount of time which elapsed between Vanlandingham's June 2019 complaint, or even his November 2019 amended complaint, and his April 2020 firing is too great to allow for an inference of causation. *See Thomas*, 506 F.3d at 1364. This Court concludes, therefore, that the motion to dismiss is

---

[2] Vanlandingham has not asked for an opportunity to plead additional facts, but the Court would not be inclined to allow for a third amendment of the complaint because he does not purport to have facts which he could allege within the strictures of Rule 11 of the *Federal Rules of Civil Procedure*, but merely speculates in his brief as to the existence of facts; for example, stating that he "anticipates" that discovery could reveal facts that would support his causation theories. (Doc. 54 at 20).

due to be GRANTED as to the termination aspect of Vanlandingham's claim against the City, and the Court need not address the other grounds asserted for dismissal of this claim.

### B. Claims Against Individual Defendants

The individual Defendants have raised the defense of qualified immunity. Qualified immunity protects government officials from suit if they are "performing discretionary functions" and "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 525–26 (1985). "It is particularly difficult to overcome the qualified immunity defense in the First Amendment context." *Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017).

In resolving questions of qualified immunity, courts engage in a two-pronged inquiry. The first asks whether the facts, "[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right [.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong of the qualified-immunity analysis asks whether the right in question was "clearly established" at the time of the violation. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "[T]he salient question ... is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650 (2014)(footnote omitted).

With respect to Vanlandingham's termination claim, for the reasons discussed above, Vanlandingham has not alleged a constitutional claim, and the individual

13

Defendants are entitled to qualified immunity on that aspect of his claim. With respect to the suspension claim, as to which Vanlandingham has alleged a plausible constitutional violation, there is apparently no question that the individual Defendants were acting within their discretionary authority. The Court, therefore, turns to the issue of fair notice.

In *Vinyard v. Wilson*, 311 F.3d 1340, 1350–53 (11th Cir. 2002), the Eleventh Circuit articulated three ways in which individual state defendants can receive "fair notice" that their conduct violates clearly established law. First, the words of a federal statute or constitutional provision may be specific enough "to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, *even in the total absence of case law*." *Id.* at 1350 (emphasis in original). The Eleventh Circuit considers a case falling into this category an "obvious clarity case." *Id.* at 1350.

Second, if the conduct at issue is not so egregious as to violate the Constitution or a federal statue on its face, the court must turn its attention to case law that espouses "broad statements of principle . . . that are not tied to particularized facts." *Id.* at 1351. In these types of cases, courts will declare "X Conduct" unconstitutional regardless of the specific factual situation. *Id.* "[P]ut differently, the precise facts surrounding 'X Conduct' are immaterial to the violation," thus these decisions can "clearly establish law applicable in the future to different sets of detailed facts." *Id.*

Third, courts must look to cases that tie a particular type of conduct to the specific facts of the case. *Id.* With these cases, courts must examine case law stating that "Y Conduct" is unconstitutional in "Z circumstances." *Id.* If the circumstances facing the

official are "materially similar" to those of the fact-specific case, this precedent can clearly establish the applicable law and qualified immunity will not be warranted. *Id.* at 1352.

The Defendants contend that Vanlandingham cannot show that a reasonable public official would have known that he spoke as a private citizen during his meeting with Mills or that the *Pickering* balancing test favored him.

It is Vanlandingham's position that the individual Defendants are not entitled to qualified immunity because it is clearly established that public officials have a First Amendment right to speak as citizens on a matter of public concern. Vanlandingham contends that the Eleventh Circuit's decision in *Carollo v. Boria*, 833 F.3d 1322 (11th Cir. 2016), gave the individual Defendants notice that a public employee can speak as a private citizen and enjoy First Amendment protection when he complains about misconduct by a fellow public employee.

In *Carollo*, 833 F.3d at 1334–35, the Eleventh Circuit held that reasonable public officials would have known at the time of an employee's termination that it violated the First Amendment to terminate a colleague for speaking about matters of public concern that are outside the scope of his ordinary job responsibilities, and because the plaintiff in that case had plausibly alleged that at least some of his speech was about matters of public concern and outside the scope of his ordinary job responsibilities, the defendants were not entitled to qualified immunity. The court noted, however, that there was no issue of *Pickering* balancing in that case, stating that "decisions applying *Pickering*'s balancing test are irrelevant, however, because here appellants do not advance an argument that they had

15

an adequate justification for terminating Carollo, only that Carollo spoke pursuant to his official job responsibilities." *Id.* at 1334.[3]

The absence of *Pickering* balancing in *Carollo* is significant. This Court finds persuasive the reasoning of another court in this circuit that cases addressing qualified immunity in the context of a First Amendment retaliation claim fall into two categories: (1) the challenged employment action is taken in response to the constitutionally protected speech at issue and (2) the challenged employment action is indirect retaliation "ostensibly unrelated to the employee's constitutionally protected speech." *Tatroe v. Cobb Cty., Georgia*, 2006 WL 559437, at *14 (N.D. Ga. Mar. 7, 2006), *aff'd sub nom. Tatroe v. Wheeler*, 221 F. App'x 899 (11th Cir. 2007). In the first category, the employer typically takes action claiming that the speech threatens efficiency, and the focus of the parties' arguments is the second step of the *Pickering* balancing test. *Id.* In the second category, causation is the primary issue, and *Pickering* balancing does not apply. *Id.* Eleventh Circuit precedent typically requires qualified immunity in the first category of cases "unless the plaintiff can demonstrate that the tilt of the balance was so strongly in favor of the employee's speech that the defendants should have known that their conduct constituted unlawful retaliation." *Id.*

---

[3] The balancing test established in *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, Will Cty.*, 391 U.S. 563 (1968), seeks to arrive at a balance between the employee's interest in commenting on matters of public concern and his employer's interest in efficiently providing public services. The "manner, time, and place" of the challenged speech and "the context" in which it arose are relevant, as are whether the statement "impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Moss v. City of Pembroke Pines*, 782 F.3d 613, 621 (11th Cir. 2015).

Because this is a case involving the first category--the challenged employment action is taken in response to the constitutionally protected speech at issue—and, therefore, *Pickering* balancing applies, whereas *Carollo* did not involve *Pickering* balancing, this Court cannot conclude that *Carollo* clearly established the law in this case.

In *Lane v. Franks*, 573 U.S. 228 (2014), the Supreme Court held that individual defendants were entitled to qualified immunity because no existing case law made it clear that a government employer could not fire an employee because of his conduct in a lawsuit. The Supreme Court explained that this was "the dispositive point" of the qualified immunity inquiry: "[a]t the time of Lane's termination, Eleventh Circuit precedent did not provide clear notice that subpoenaed testimony concerning information acquired through public employment is speech of a citizen entitled to First Amendment protection." *Id.* at 245.[4]

In this case, as this Court explained in an earlier opinion denying a motion to dismiss, "based on the allegations of the amended verified complaint, Vanlandingham spoke in response to a citizen's questions about actions by a different law enforcement branch, not the City police department which employed him, and in the absence of sufficient facts to more fully analyze the context of that speech, he has plausibly alleged that he was not speaking pursuant to his employment responsibilities." (Doc. 34

---

[4] This Court notes that the *Carollo* court did not consider the Supreme Court's decision in *Lane* in making its determination on qualified immunity. *Carollo*, 833 F.3d at 1333 (stating "[a]ny cases decided after April 23, 2014—including the Supreme Court's June 19, 2014 decision in Lane—are not relevant to this analysis.").

17

at 15). This Court also explained that there is a need for factual development in this case as to this issue and as to *Pickering* balancing. (Doc. 34).

Applying the "dispositive issue" from *Lane,* 573 U.S. at 245, to the facts alleged here, this Court must conclude that Eleventh Circuit precedent did not provide clear notice that statements made to a citizen concerning information acquired through public employment that are critical of another branch of government is speech of a citizen entitled to First Amendment protection. In addition, this Court cannot conclude under *Pickering* balancing in this case, where the individual Defendants have argued that cooperation among law enforcement agencies is important to the functioning of the City, that the balance was so strongly in favor of the employee's speech that the individual Defendants should have known that their conduct constituted unlawful retaliation. *See King v. Bd. of Cty. Commissioners*, 2018 WL 515350, at *4 (M.D. Fla. 2018) (stating that even clearly established law showed plaintiff's speech was citizen speech on a matter of public concern, it was not clearly established that the *Pickering* balancing test would weigh in the plaintiff's favor), *aff'd*, 916 F.3d 1339 (11th Cir. 2019). The Court concludes, therefore, that the individual Defendants are entitled to qualified immunity, and the motion to dismiss is due to be GRANTED as to the individual Defendants as to the suspension claim.

### IV. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The motion to dismiss (doc. 47) is DENIED as to claim against the City for denial of Vanlandingham's First Amendment rights through suspension.

2. The motion to dismiss (doc. 47) is GRANTED as to the termination claim against the City and all claims against Defendants Billy Helms, Terry Allums, Brendt Murphy, Dorothy L. Baker, Rena' Cosby, and Harold Robison, Jr. and those claims are DISMISSED.

DONE this 1st day of September, 2020.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE